**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| MR. MICHAEL SCHMIDT and<br>MRS. DEBORAH BARKER,<br><br>     Plaintiffs,<br><br>v.<br><br>WELLS FARGO HOME MORTGAGE, A<br>DIVISION OF WELLS FARGO BANK,<br>N.A.,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)    Civil Action No:  3:11-cv-00059-JRS<br>)<br>)<br>)<br>)<br>)<br>) |

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

### I. INTRODUCTION

This lawsuit seeks redress for a loan servicer's unlawful business practices where its representatives told two homeowners to default on their loans to receive a loan modification. Defendant would like this Court to believe that this case is based on a mistaken belief that a homeowner is entitled to a loan modification. To the contrary, this lawsuit alleges that Virginia homeowners are entitled to freedom from fraud and deceptive trade practices in the servicing of residential mortgages.

In their First Amended Complaint ("FAC"), Plaintiffs Michael Schmidt and Deborah Barker allege that representatives of Defendant Wells Fargo Home Mortgage, a division of Wells Fargo Bank N.A. ("Wells Fargo") defrauded Plaintiffs into falling behind on their mortgage with false promises of receiving loan modifications. When Plaintiffs relied on Defendant's statements, they received not the relief promised, but rather penalties, fees, and threat of

1

foreclosure.  If this Court accepts the allegations in the FAC as true, then Defendant's Motion to Dismiss must be denied.

## II. <u>LEGAL STANDARD</u>

In considering a motion to dismiss under Rule 12(b)(6), the Court must assume that the allegations in the non-moving party's pleadings are true and construe all facts in the light most favorable to the non-moving party. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Traditionally, a motion to dismiss under 12(b)(6), "tests the sufficiency of a complaint;… it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C.*, 980 F.2d at 952.  In *Bell Atlantic Corp. v. Twombly*, the Supreme Court amplified the standard, noting that, to survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  While it does not require "detailed factual allegations," *Twombly* held that Rule 8 of the Federal Rules of Civil Procedure does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id*. at 555.  Thus, a complaint containing facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557. Rather, a complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Plaintiffs have sufficiently stated claims for relief and Defendant's Motion should be denied.

III. <u>ARGUMENT</u>

**A. Defendant's Motion Should Be Denied Because Defendant's Argument That Plaintiffs Notify Wells Fargo Prior To The Instant Lawsuit Is Meritless.**

Defendant argues that Plaintiffs were required to "give notice before commencing this action" and that they failed to do so.  (Def. Mot. to Dismiss at p. 7).  Defendant's argument is meritless because none of Plaintiffs' claims arise from the contract at issue.  The clause states:

> Neither Borrower or Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's action ***pursuant to this Security Instrument*** or that alleges the other party has breached any provision of, or any duty by reason of, this Security Instrument, until Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of notice to take corrective action.

*See* Ex. A to Def.'s Mot. to Dismiss; Ex. B. to Def.'s Mot. to Dismiss (emphasis added).

None of Plaintiffs' claims arise from any party's actions pursuant to the security instrument.  As such, Defendant has misplaced its reliance on *Niyaz v. Bank of America*, No. 1:10cv796, 2011 U.S. Dist LEXIS 156 (E.D. Va. Jan. 3, 2011) (attached as Exhibit A).  In *Niyaz*, the plaintiff's only claims against the loan servicer were violations of terms implied in the deed of trust.  *Id*.  Unlike *Niyaz*, the FAC makes no claims for breach of contract nor are any of the claims based on the contracts that Defendant has put at issue.

In a similar case, a plaintiff was foreclosed from bringing breach of contract claims.  *See Gerber v. First Horizon Home Loans Corp.*, No. 05-1554P, 2006 U.S. Dist. LEXIS 12225 (W.D. Wash. Mar. 8, 2006) (attached as Exhibit B). However, the homeowner was permitted to bring claims for deceptive business practices that existed independently of the contract between the parties.  *Id*. at *2-*3.  Here, as in *Gerber*, Plaintiffs have raised claims for unfair and deceptive trade practices under the Virginia Consumer Protection Act, the Fair Debt Collections Practices

Act, Fraud, and the Federal Truth In Lending Act.  All of these allegations are independent of the contract.  As such, Defendant's Motion to Dismiss should be denied on this basis.

> **i.    Defendant Cannot Raise A Defense Based On A Contract To Which It Is Not A Party.**

Defendant cannot avail itself of the clause contained in Plaintiffs' deeds of trust because Defendant's lack of privity precludes it from raising such an argument.  Here, the clause specifically binds the "Borrower" and the "Lender."  *See* Ex. A to Def.'s Mot. to Dismiss; Ex. B to Def.'s Mot. to Dismiss.  Nowhere in the agreements is Wells Fargo defined as the "Lender." Rather, as Defendant's Answer to the FAC points out, Wells Fargo is merely the loan servicer. *See* Def. Answer to FAC at ¶ 22.  In cases such as this, only a contract's privies may enforce its terms.  *See Soble v. Herman*, 175 Va. 489, 9 S.E.2d 459 (1940).  As such, Defendant's Motion to Dismiss should be denied on this basis.

> **ii.    Defendant's Argument Would Lead To An Absurd Result Because Notices Required Under The Deeds Of Trust Are To Be Sent To The Lender, Not The Loan Servicer.**

Any notice required to be given by the cited provision would have been futile.  The cited clause directs the Borrower to submit notices in accordance with Section 15 of the deeds of trust. Section 15 instructs the borrower to deliver notices to the Lender's address as specified in Section C.  That address belongs to an entity other than Wells Fargo.  Any notices of this dispute sent to that address never would have reached Wells Fargo.

> **iii.    Even If This Clause Were Applicable To The Claims At Issue, Which It Is Not, Its Enforcement Is Not The Proper Subject Of A Motion To Dismiss Under Rule 12(b)(6).**

Even if this clause were applicable and Defendant had sufficient privity to enforce it, the remedy is not a motion to dismiss.  Rule 12(b)(6) only tests a Complaint for its "failure to state a claim upon which relief can be granted . . . ." Fed.R. Civ.P. Rule 12(b)(6).  Defendant's

accusation that Plaintiffs have breached the deeds of trust is not a violation of the agreement to be remedied by a motion to dismiss.  Rather, the proper remedy is a claim for breach of contract, for which Defendant cannot in good faith claim any compensable damages.

Defendant's Motion to Dismiss should be denied on this basis.

**B.  Defendant's Motion Should Be Denied As To Count I Because The VCPA Applies To Wells Fargo.**

Defendant erroneously argues that the Federal Consumer Credit Protection Act ("FCCPA") governs Plaintiffs' claims and therefore Plaintiffs' relief under the Virginia Consumer Protection Act is excluded under Va. Code § 59.1-199.  In furtherance of this errant proposition, Defendant relies on *Smith v. United States Credit Corp.*, 626 F. Supp. 102, 103 (E.D. Va. 1985).  However, in rejecting the application of *Smith* in a similar case against a loan servicer, a subsequent Virginia court stated:

> *Smith* dealt with a specific "aspect" of the FCCPA, failure to give proper disclosures of the cost of credit. This makes *Smith* inapposite. Litton has failed to provide a specific, applicable provision of the FCCPA that would preempt the VCPA.  Without any "aspect" regulated by the FCCPA, plaintiffs' claim under the VCPA properly lies as a cause of action.

*Reed v. Litton Loan Servicing, L.P.*, 64 Va. Cir. 447, 448 (Va. Cir. Ct. 2004)

Here, as in *Reed*, no part of the FCCPA gives Plaintiffs redress for the fraudulent and deceptive statements made pursuant to Defendant's servicing of Plaintiffs' loans.  *See* 15 U.S.C. § 1601, *et seq*.  Indeed, Defendant has cited to no portion of the FCCPA that does, in fact, govern those claims.  The FCCPA does not apply to any aspect of the transaction in dispute.

Defendant also makes various arguments that the definitions of the VCPA exempt Wells Fargo based on its status as a servicer of a mortgage secured by residential property.  All of these arguments are without merit.  The Virginia Consumer Protection Act applies to Wells Fargo in its capacity as a loan servicer and to the transaction at issue.  Defendant asserts that the VCPA

does not apply to Wells Fargo because the VCPA does not apply to banks or mortgage lenders. However, the VCPA's exclusions do not apply to Wells Fargo based upon the allegations in the FAC.

Specifically, the VCPA provides for the following exclusions:

Nothing in this chapter shall apply to:

A. Any aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth or the United States, or the formal advisory opinions of any regulatory body or official of this Commonwealth or the United States.

B. Acts done by the publisher, owner, agent or employee of a newspaper, periodical, or radio or television station, or other advertising media such as outdoor advertising and advertising agencies, in the publication or dissemination of an advertisement in violation of § 59.1-200, unless it be proved that such person knew that the advertisement was of a character prohibited by § 59.1-200.

C. Those aspects of a consumer transaction which are regulated by the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq*.

D. Banks, savings institutions, credit unions, small loan companies, public service corporations, mortgage lenders as defined in § 6.2-1600, broker-dealers as defined in § 13.1-501, gas suppliers as defined in subsection E of § 56-235.8, and insurance companies regulated and supervised by the State Corporation Commission or a comparable federal regulating body.

E. Any aspect of a consumer transaction which is subject to the Landlord and Tenant Act, Chapter 13 (§ 55-217 *et seq*.) of Title 55 or the Virginia Residential Landlord and Tenant Act, Chapter 13.2 (§ 55-248.2 et seq.) of Title 55, unless the act or practice of a landlord constitutes a misrepresentation or fraudulent act or practice under § 59.1-200.

F. Real estate licensees who are licensed under Chapter 21 (§ 54.1-2100 et seq.) of Title 54.1.

Va. Code. Ann. § 59.1-199.

The statute does not exclude loan servicers from its jurisdiction nor does it prevent its application to the servicing of residential mortgages.  The First Amended Complaint alleges that Wells Fargo committed a series of prohibited acts while servicing Plaintiffs' loan.  (FAC. at ¶¶ 45-48).  Contrary to Defendant's errant proposition, a loan servicer is not excluded from the VCPA's jurisdiction, which is why the court in *Reed v. Litton Loan Servicing, L.P.*, permitted borrowers not only to proceed on claims against Litton Loan Servicing pursuant to fraudulent statements made through the servicing of a residential loan, but also to seek punitive damages under the Act.  64 Va. Cir. 447, 448 (Va. Cir. Ct. 2004).

Defendant has misplaced its reliance on this Court's decision in *Kidd v. Wachovia Bank, N.A.*, 2010 U.S. Dist. LEXIS 131720 (E.D. Va. Dec. 3, 2010) (attached as Exhibit C).  In *Kidd*, this Court exempted from the VCPA a consumer's claim against a bank based on improprieties with a debit card transaction.  Defendant has similarly misplaced its reliance on *Feely v. Total Realty Mgmt.*, 660 F. Supp. 2d 700 (E.D. Va. 2009).  That case involved claims made by a large group of investors regarding a commercial investment project.  The statute specifically excluded the transactions at issue in both *Kidd* and *Feely*.  Neither of those cases is applicable here where the statute has not specifically excluded loan servicers from its coverage.  Indeed, Defendant has provided no case law stating that a loan servicer is beyond the VCPA's jurisdiction.

Consequently, Defendant's Motion should be denied as to Count I.

**C.  Defendant's Motion Should Be Denied As To Count II For Violations Of The FDCPA Because Wells Fargo Was A "Debt Collector" Engaging In "Debt Collection" Activities.**

In order to establish a federal Fair Debt Collection Practices Act ("FDCPA") violation, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from

7

consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the

defendant has engaged in an act or omission prohibited by the FDCPA. *See Dikun v. Streich*, 369

F. Supp. 2d 781, 784-85 (E.D. Va. 2005). The FDCPA defines a debt collector as the following:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.
>
> Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.  For the purpose of section 808(6) [15 USCS § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.
>
> The term does not include—
>
> (A)  any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
>
> (B)  any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;
>
> (C)  any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;
>
> (D)  any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;
>
> (E)  any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by

8

receiving payments from such consumers and distributing such amounts to creditors; and

(F)   any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6).

Defendant Wells Fargo is a "debt collector" as a matter of law.  *See Oppong v. First Union Mortg. Corp.*, 215 Fed. Appx. 114, 118 (3d Cir. 2007).  In *Oppong*, the Third Circuit declared that Wells Fargo is a debt collector under the FDCPA under the below analysis:

> Section 1692a(6) defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Thus, a business may be a "debt collector" because its "principal purpose" is the collection of debts or because it "regularly" engages in the collection of debts.  This definition of "debt collector" excludes creditors who attempt to collect their own debts, but does not exclude an entity in Wells Fargo 's position who has acquired a debt that was already in default
>
> Wells Fargo is not an entity whose "principal purpose" is to collect others' debts.  Rather, the declaration by Kristina Nagel submitted to the District Court along with the renewed summary judgment motion shows that, in a three-month period, only 89, out of 141,597, of the loans that Wells Fargo acquired were in default. However, ***the District Court was correct to conclude that Wells Fargo  is a debt collector under the FDCPA because it "regularly" collects debts owed to another.***

*Oppong v. First Union Mortg. Corp.*, 215 Fed. Appx. 114, 118-119 (3d Cir. 2007).  Based upon this assessment by the Third Circuit, Wells Fargo is a debt collector under the FDCPA because it regularly collects debts owed to another.

9

Even if this Court were to ignore the holding in *Oppong*, nothing on the face of the statute explicitly exempts loan servicers from the definition of a debt collector. As such, it cannot be said, as Defendant urges, that a loan servicer is not a debt collector as a matter of law.

In that regard, Defendant's cited cases are inapposite. Defendant cites to *Bolouri v. Bank of America, N.A.*, but in that case there was no dispute that the debt was owed to Bank of America and that Bank of America was attempting to collect on its own debt. No. 1:10-cv-225, 2010 U.S. Dist. LEXIS 87170 (E.D. Va Aug. 24, 2010) (attached as Exhibit D). That reasoning is inapplicable here where Defendant Wells Fargo has not proffered that it does in fact own the debt that it attempted to collect.

Defendant argues that Plaintiffs have failed to allege actionable misconduct on the part of defendant. To the contrary, Plaintiffs have articulated that Defendant Wells Fargo, by and through its employees, agents, and/or authorized representatives, encouraged Plaintiffs to become delinquent and/or to default on the mortgages secured by the Properties in exchange for loan modifications. (FAC at ¶ 45). During the loan modification process, Plaintiffs were consistently denied loan modifications. (FAC at ¶ 46). Plaintiffs were told that they were denied for varying reasons. (FAC at ¶ 46). Once they were told that they had failed to provide all of the necessary paperwork, when they had provided all that was asked of them. (FAC at ¶ 46). Once they were told that they had failed to provide additional paperwork above and beyond what they were initially required to provide—when none of the additional paperwork was requested in the first place. (FAC at ¶ 46). Once they became delinquent, Wells Fargo denied their loan modification requests and initiated the foreclosure process. (FAC at ¶ 47). While Wells Fargo was continuing with the foreclosure process, Wells Fargo continued to string Plaintiffs along with additional loan modification offers in an effort to acquire additional payments from them,

when these additional payments would not have halted the foreclosure processes already underway.  (FAC at ¶ 48).

The alleged misconduct falls within the scope of the FDCPA.  The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements, in connection with the collection of a debt, and it also requires debt collectors to give debtors certain information.  *See, e.g.* 15 U.S.C. §§1692(d), 1692(e), 1692(f) and 1692(g).  A "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Nor may a debt collector "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  The FAC has alleged actionable claims against Defendant Wells Fargo.[1]

Consequently, Defendant's Motion should be denied as to Count II.

**D.  Defendant's Motion Should Be Denied As To Plaintiffs' Fraud, Constructive Fraud, Fraudulent Inducement, Fraudulent Misrepresentation, and Negligent Misrepresentation Claims Because Plaintiffs Have Sufficiently Pleaded These Causes Of Action.**

**1.  Defendant's Motion Should Be Denied Because It Has Not Filed A Motion For More Definite Statement, A Prerequisite To Dismissal Under Rule 9(b).**

---

[1] Defendant's argument that it is exempt from the FDCPA because it was acting pursuant to its fiduciary obligations to the owner of the debt obligations is nothing less than disingenuous.  First, its cited case *Wilson v. Draper & Goldberg*, was decided in favor of the consumers on this issue.  *See* 443 F.3d 373, 377-79 (4th Cir. 2006).  Second, the FDCPA's fiduciary exemption applies only to a "person collecting or attempting to collect any debt … due another to the extent such activity … is ***incidental*** to a bona fide fiduciary obligation." 15 U.S.C.A. § 1692a(6)(F)(i) (emphasis added).  There is no fiduciary obligation at issue here.  Even if there were, Wells Fargo's misconduct was not incidental to any such fiduciary obligation.  Rather, it was central to that alleged obligation. *See Wilson*, *supra* at 377.  Defendant's Motion to Dismiss on this Count should be denied on this basis.

Defendant asserts that Plaintiffs' fraud claims in Count III-VII should be dismissed because they failed to meet the heightened pleading standard in accordance with Rule 9(b) of the Federal Rules of Civil Procedure.

However, the proper remedy for a failure to meet the pleading requirements of Rule 9(b) is not a motion to dismiss, but rather a motion for more definite statement, which Defendant Wells Fargo has not filed. *See Fed. Ins. Co. v. Webne*, 513 F Supp 2d 921 (N.D. Ohio 2007); *Piper Acceptance Corp. v. Slaughter*, 600 F Supp 169, (D. Colo. 1985); *Seligson v. Plum Tree, Inc.*, 361 F Supp 748, (E.D. Pa. 1973).

### 2. A Motion For More Definite Statement Is Unnecessary Because Plaintiffs Have Sufficiently Satisfied The Heightened Pleading Standard Of Rule 9(b).

The Federal Rules require that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* Fed.R.Civ.P. Rule 9(b). However, in the FAC, specifically in paragraphs 46 through 48, and more generally in the prior allegations, Plaintiffs provide a detailed account of the manner in which Wells Fargo induced Plaintiffs to default on their mortgage and then solicited them for payments to prevent a foreclosure that it had no intention of stopping.

In Counts III-VII, Plaintiffs incorporate the previous paragraphs alleged in the Complaint. (FAC at ¶ 56. The Complaint then explains the origin of the two time periods around which the fraud schemes took place: (a) in the false statements by the Wells Fargo representatives stating that Plaintiffs would receive loan modifications if they defaulted on both of their home loans, (FAC ¶¶ at 45-48);[2] and (b) the statements aimed at inducing Plaintiffs to continue making mortgage payments to prevent a foreclosure, even after the foreclosure process

---

[2] At the time these statements were made, Plaintiffs were still current on their payments. (FAC at ¶ 29). As alleged, these representations were intended to induce Plaintiffs to default on their mortgage. (FAC at ¶¶ 45-48).

had begun, even though Defendant knew that the payments would not halt the planned foreclosure. (FAC at ¶¶ 45-48). The Complaint further alleges that Plaintiffs relied on these statements by falling behind on the mortgage in order to attain the promised loan modification and by making post-default, post-acceleration payments to Wells Fargo to prevent the foreclosure that Wells Fargo had already initiated.[3] (FAC at ¶¶ 45-48).[4]

A far less-detailed account of a similar fraud scheme surpassed the Rule 9(b) threshold in *Thiel v. GMAC Mortg.*, a post-*Iqbal* and *Twombly* decision, where the homeowner alleged that the loan servicer falsely represented that the homeowner would be granted a loan modification if he became delinquent on his loan. No. 2:10-cv-00645-MCE-DAD, 2010 U.S. Dist. LEXIS 92230, at *7 (E.D. Cal. Sept. 2, 2010)(attached as Exhibit E). There, the homeowner alleged that

---

[3] The fact that these representations were made post-default is significant. According to the deeds of trust attached to Defendant's Motion, Wells Fargo had the right to accelerate the debt—meaning that the sums Defendant solicited from Plaintiffs could not possibly have cured the default prior to foreclosure.

[4] For these reasons, Plaintiffs have adequately stated a claim for which relief can be granted as to Counts III-VII: fraud, constructive fraud, negligent misrepresentation, fraudulent inducement, and fraudulent concealment. Defendant Wells Fargo stated to Plaintiffs that their loan would be modified if and only if they defaulted on the mortgage, on which statements Plaintiffs relied. (FAC ¶¶ 45-48). In *Thiel v. GMAC Mortg.*, such statements were considered sufficient to allege (a) justifiable and (b) actual reliance (c) to the detriment of the plaintiff. No. 2:10-cv-00645-MCE-DAD, 2010 U.S. Dist. LEXIS 92230, at *7 (E.D. Cal. Sept. 2, 2010)(attached as Exhibit E). *See also Hughes v. Wells Fargo Bank, NA*, No. CV 09-2496-PHX-MHM, 2009 U.S. Dist. LEXIS 122812, at *5 (D. Ariz. Dec. 18, 2009) (attached as Exhibit F) ("the Court is not unaware of Plaintiffs' allegation that ***Defendants induced the default by leading them to believe that loan modification was available only to persons that had defaulted on their loan***. If true, Plaintiffs could possibly have a separate cause of action, such as fraud or negligent misrepresentation . . . .") (emphasis added). Further, the Complaint alleges that Plaintiffs were induced into making additional payments to Defendant—after default and after the debt had been accelerated—misleading Plaintiffs into believing that such payments would prevent the foreclosure, when Defendant had already begun the foreclosure process and/or had no intention of halting the foreclosure because these payments could not have satisfied the accelerated debt. (FAC ¶¶ 45-48). As a matter of law, these allegations state a claim for which relief can be granted. *See Barinaga v. JP Morgan Chase & Co.*, No. 10-CV-266-AC, 2010 U.S. Dist. LEXIS 114245, at *45 (D. Or. Oct. 26, 2010) (attached as Exhibit G).

at the time this misrepresentation was made the loan servicer knew it was false, or made the misrepresentation with reckless disregard for its truth.[5] *Id.*

There, the homeowner was only able to allege one specific conversation in which the representation was made. *Id*. at *8. Here, Plaintiffs allege that the representations were made multiple times. The homeowner in *Thiel*, as here, alleged that he withheld payments as directed, but the loan servicer refused to modify the loan. *Id*. at *8. In denying the loan servicer's motion to dismiss, the court declared:

> These allegations are sufficient to give Defendant notice of the particular misconduct which is alleged to constitute fraud. Plaintiff has provided statements of time, place, and nature of the alleged fraudulent activities. Plaintiff has therefore met his pleading burden. Thus, Defendant's Motion to Dismiss Plaintiff's fraud claim is denied.

*Thiel*, 2010 U.S. Dist. LEXIS 92230, at *8.

Similarly, in *Barinaga v. JP Morgan Chase & Co.*, a homeowner's fraud claim was sufficiently pleaded where she alleged that she continued to make mortgage payments after default where the lender promised not to foreclose if she continued to make such payments. No. 10-CV-266-AC, 2010 U.S. Dist. LEXIS 114245, at *45 (D. Or. Oct. 26, 2010) (attached as Exhibit G). The inducements became actionable because these were post-default, post-acceleration inducements where the homeowner never would have made the payments had the lender's inducements not been made. *Id*. at *45-*46.

There the court declared:

> While the allegations in the Complaint do not allege ***each and every element of a prima facie claim for fraud with precision and specificity***, the allegations provide ***enough information about***

---

[5] The same is true here, where the Complaint alleges that all of the misrepresentations referred to in Counts III-VII were made intentionally and knowingly with the intent of either accelerating the foreclosure process or to induce Plaintiffs into making payments that would neither delay nor stop the inevitable foreclosure process (FAC at ¶ 48).

> ***Barinaga's theory to allow Chase to frame a reasonable defense***. Under the federal court's notice pleading, which requires a short and plain statement of a plausible claim supported by factual allegations, Barinaga's allegations of fraud are sufficient to gives [sic] Chase fair notice of the claim and ground upon which it rests and to satisfy the requirements of Rule 9. *See Ashcroft*, 129 S. Ct. at 1950; Fed. R. Civ. P. 8(a).

*Barinaga*, 2010 U.S. Dist. LEXIS 114245, at *46 (*citing Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)(emphases added).

Thus, under *Thiel* and *Barinaga* as interpreting Rules 9(b) and 8(a), *Iqbal*, and *Twombly*, if the inquiry is whether Defendant has sufficient information to frame a reasonable defense, the facts as alleged demonstrably show that it can.  As such, Defendant's Motion as to Counts III-VII should be denied because Plaintiffs have satisfied the heightened pleading requirement of Rule 9(b).

**E. Defendant's Motion Should Be Denied As To Counts III-VII Because The Economic Loss Rule Does Not Bar Plaintiffs' Tort Claims.**

Defendant erroneously asserts that Virginia's Economic Loss Doctrine bars Counts III-VII.  Defendant's Motion fails because Defendant owed Plaintiffs a legal duty independent of any contractual relationship (a) not to defraud them into defaulting on their mortgage with false promises of a loan modification and (b) not to mislead them into making payments intended to prevent a foreclosure when Defendant had every intention of foreclosing on the property anyway.

The economic loss rule prohibits the recovery of "'purely economic losses' in a tort action simply by recasting a contract claim as a tort claim." *Waytec Elec. Corp. v. Rohm and Haas Elec. Materials, LLC*, 459 F. Supp. 2d 480, 491 (W.D. Va. 2006) (citing *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 374 S.E.2d 55, 57 (Va. 1988)).  The purpose of the rule is to preserve the contract-tort distinction in the common law.  "The law of torts is well equipped to

15

offer redress for losses suffered by some reason of a 'breach of some duty imposed by law to protect the broad interests of social policy.' Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Sensenbrenner*, 374 S.E.2d at 58 (quoting *Kamlar Corp. v. Haley*, 299 S.E.2d 514, 517 (Va. 1983)).

The economic loss rule does not apply here.  To determine whether a claim is subject to the restrictions imposed by the economic loss rule, a court must first determine the nature and source of the duty allegedly violated.  *Richmond Metro Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1988).  If the duty does not exist absent an agreement establishing that duty, then it is a duty based in contract.  *Id.*  If the duty arises from the relationship of the parties irrespective of any agreement, then the action for breach of that duty sounds in tort.  *Oleyar v. Kerr*, 225 S.E.2d 398, 399-400 (Va. 1976). "Thus, if, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply." *City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990).

Counts III-VII, although related to contract, still sound in tort.  "The general rule is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements of future events." *Soble v. Herman*, 9 S.E.2d 459, 464 (Va. 1940).  The "critical inquiry . . . is whether the defendant's statement . . . was false when made." *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988).  Indeed, when a party "makes a promise, intending not to perform, his promise is a misrepresentation of present fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud."

16

*Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 325 S.E.2d 91, 94 (Va. 1985). That

is precisely what happened here.

Based on the foregoing analysis, Defendant Wells Fargo had an independent duty, aside

from the existence of the alleged contracts, not to commit the fraud complained of in Counts III-

VII. As such, Defendant's Motion should be denied because the economic loss rule does not bar

these claims.

### F. Defendant's Motion Should Be Denied As To Plaintiffs' Estoppel Claim Because The Remedy Is Available To Prevent The Unlawful Foreclosure In The State Court Proceeding From Which This Case Was Removed.

Defendant errantly states that a claim for estoppel is merely a remedy, not an independent

action. But Defendant's counsel learned that this was untrue when their motion to dismiss was

denied on the same grounds in *Corder v. Countrywide Home Loans*, Inc., No. 2:10-0738, 2011

U.S. Dist. LEXIS 7669, *19-20 (S.D. W. Va. Jan. 26, 2011) (attached as Exhibit H).

The Virginia Supreme Court has stated:

> The general rule of equitable estoppel, or, as it is frequently called,
> estoppel in pais, is that when one person, by his statements,
> conduct, action, behavior, concealment, or even silence, has
> induced another, who has a right to rely upon those statements,
> etc., and who does rely upon them in good faith, to believe in the
> existence of the state of facts with which they are compatible, and
> act upon that belief, the former will not be allowed to assert, as
> against the later, the existence of a different state of facts from that
> indicated by his statements or conduct, if the latter has so far
> changed his position that he would be injured thereby.

*Heath v. Valentine*, 177 Va. 731, 737 (Va. 1941).

Subsequent Virginia courts have proceeded to allow a plaintiff to proceed in actions for

equitable estoppel or estoppel *in pais*. *See, e.g.*, *Trayer v. Bristol Parking, Inc.*, 198 Va. 595,

606, 95 S.E.2d 224, 232 (1956); *Khoury v. Community Memorial Hospital, Inc.*, 203 Va. 236,

243 (Va. 1962); *Gallimore, Inc. v. Home Indem. Co.*, 432 F. Supp. 434, 437 (W.D. Va. 1977).

Further, Defendant's Motion continues to assert that Plaintiffs' estoppel claim is barred by the statute of frauds.  (Def. Mot. at 25).  But, counsel for Defendant made this same argument in *Corder*, *supra*, and was rejected there for the same reason the Court should deny it here.  The *Corder* court explained that because the plaintiff's "equitable estoppel claim does not seek to enforce any contractual agreement between the parties, defendant['s] contentions are neither disputed nor material to [plaintiff's] claim and must be rejected."  *Corder*, 2011 U.S. Dist. LEXIS 7669, at *20.

At this stage of the proceedings, it is simply inappropriate to dismiss Plaintiffs' estoppel claim.  If the Complaint alleges each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim.  *Twombly*, 550 U.S. at 563 n.8.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion on all accounts.

Respectfully submitted,

_____/s/_____

Colin D. Winkler, (VSB No. 75578)
*Counsel for Plaintiffs*
The Law Office of Colin D. Winkler, PLLC
3703 14th St. S.
Arlington, Virginia 22204-5039
TEL:  571.393.1290
FAX: 571.384.5984
colinwinkler@winklerlegalcounsel.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of March, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

> John C. Lynch (VSB No. 39267)
> Ethan G. Ostroff (VSB No. 71610)
> TROUTMAN SANDERS, LLP
> 222 Central Park Avenue, Suite 2000
> Virginia Beach, Virginia 23462
> Telephone: (757) 687-7765
> Facsimile: (757) 687-1504
> John.Lynch@troutmansanders.com
> Ethan.Ostroff@troutmansanders.com

_____/s/_____

> Colin D. Winkler, (VSB No. 75578)
> *Counsel for Plaintiffs*
> The Law Office of Colin D. Winkler, PLLC
> 3703 14th St. S.
> Arlington, Virginia 22204-5039
> TEL:  571.393.1290
> FAX: 571.384.5984
> colinwinkler@winklerlegalcounsel.com