UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| MICHAEL SCHMIDT and DEBORAH BARKER,<br><br>                           Plaintiffs,<br><br>  v.<br><br>WELLS FARGO HOME MORTGAGE,<br><br>                           Defendant. | Civil Action No. 3:11–CV–059 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Wells Fargo's motion to dismiss. (Doc. No. 16). Plaintiffs Michael Schmidt and Deborah Barker filed this action against Wells Fargo to prevent the foreclosure of two properties based on what they allege are Wells Fargo's fraudulent denials of multiple loan modification requests. For the reasons stated from the bench at the hearing on this matter and for the reasons stated below, the Court will GRANT the motion to dismiss.

**I. BACKGROUND**[1]

The Plaintiffs, who are married, own two residences for which Wells Fargo is the loan servicer. In 2003, the Plaintiffs purchased a property at 513 Adams Street in Richmond and financed the purchase with a 30-year, fixed-rate mortgage for $304,375. In 2007, they purchased a property at 745 Lovers Lane in Deltaville. They financed this purchase with a thirty-year, adjustable-rate loan for $584,000 from EVB Mortgage. Also in

---
[1] These facts are as presented in the Amended Complaint.

1

2007, the Plaintiffs refinanced their Adams Street mortgage with EVB Mortgage, and that loan became a thirty-year, adjustable-rate loan. Both loans required interest-only payments for the first 120 months, during which time the interest rate would remain fixed.

The Plaintiffs contend that the EVB loan officer represented to them that "these loan terms were favorable because the Plaintiffs would easily be able to refinance into thirty-year fixed-rate loans before the yearly interest changed at the end of the initial 120-month, interest-only payment period." (Am. Compl. ¶ 16). The Plaintiffs also contend that the EVB loan officer assured them that EVB would keep the loans "in-house" and would act as the loan servicer. *Id.* ¶ 17. The Plaintiffs assert that they relied on these representations when they agreed to the terms of the mortgages for both properties.

Within days of the sale, EVB sold the mortgages on both properties to an entity not named in the Amended Complaint, and Wells Fargo became the servicer for both loans. In 2008, the Plaintiffs began attempts to refinance their mortgages into thirty-year, fixed-rate mortgages with Wells Fargo and other banks. All the banks denied the Plaintiffs' applications.

In March 2009, Plaintiff Deborah Barker lost her job, and the Plaintiffs' combined income decreased. Later that year, they paid a third-party company to assist them in negotiating with Wells Fargo. In October 2009, the Plaintiffs sent a hardship letter to Wells Fargo stating that they were using their savings to keep their mortgages current and that they were at great risk of default. In early 2010, Wells Fargo denied their modification application after requesting additional documentation.

Wells Fargo continued to call the Plaintiffs to encourage them to reapply for loan modifications. In March 2010, the Plaintiffs filed another application. Wells Fargo denied

2

this request and informed the Plaintiffs that "they had failed to qualify within investor guidelines for a modification." (Am. Compl. ¶ 34). Wells Fargo also informed the Plaintiffs "that as long as The Mortgage was not delinquent, they would not qualify for a loan modification." *Id.* ¶ 35.

The Plaintiffs paid both mortgages until May 2010. In June 2010, they put the Adams Street property on the market for a short sale. While the property was on the market, Wells Fargo called the Plaintiffs to collect the delinquent mortgage payment. In September 2010, the Plaintiffs filed a third application for loan modification after a Wells Fargo representative encouraged them to reapply. Later that month, Wells Fargo began foreclosure on the Adams Street property, which had been on the market for ninety days.

The Plaintiffs filed this action in Richmond Circuit Court in December 2010, and the Defendant removed the case to this Court in January 2011. (Doc. No. 1). In February, Wells Fargo filed a motion to dismiss the complaint. The Plaintiffs amended their complaint in March (Doc. No. 11), and Wells Fargo responded with the instant motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 16).

## II. **LEGAL STANDARD**

Rule 12 allows a defendant to raise a number of defenses to a claim for relief at the pleading stage. Among these is the defense that the pleadings fail to state a claim upon which the Court can grant relief. Fed. R. Civ. P. 12(b)(6). Where a motion pursuant to Rule 12(b)(6) contends that a plaintiff's pleadings are insufficient to show entitlement to relief, a court must resolve the motion by reference to the allegations in the complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The question then before the court is

whether the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief" in both "law and fact." *Id.* at 192-93.

The pleadings need not be supported by evidence but must "state a claim to relief *that is plausible on its face.*" *Id.* at 193 (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). A plausible claim is one that contains more than just "unadorned, the-defendant-unlawfully-harmed-me-accusation[s]." *Iqbal*, 129 S.Ct. at 1949. If the complaint alleges—directly or indirectly—each of the elements of a viable legal theory, the plaintiff should be given the opportunity to prove that claim.

In resolving a 12(b)(6) motion, a court must regard as true all of a plaintiff's well-pleaded allegations, *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), as well as any facts that could be proven consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In contrast, the court does not have to accept legal conclusions couched as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). *See also Iqbal*, 129 S. Ct. at 1950. With these principles in mind, a court must ultimately ascertain whether the plaintiff has stated a plausible, not merely speculative, claim for relief.

### III. **DISCUSSION**

#### A. **Notice-and-Cure Provision**

The Defendant first argues that the Court should dismiss the Amended Complaint in its entirety because the Plaintiffs have violated the deeds of trust by failing to give the Defendant notice of their claims and an opportunity to take corrective action. In a section

4

entitled "Sale of Note; Change of Loan Servicer; Notice of Grievance," the deed of trust for the North Adams Street property provides in part that

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action . . . that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Mem. Supp., Doc. No. 17, Ex. A, § 20). The deed for the Lovers Lane property contains an identical provision. (Mem. Supp., Doc. No. 17, Ex. B, § 20). Because the Plaintiffs did not provide any notice to Wells Fargo prior to initiating this action, the Defendant argues that they have failed to satisfy a condition precedent and that this action is improper. The Court disagrees.

The notice-and-cure provisions in the deeds of trust bind the borrower and the lender, not the borrower and the loan servicer. The cases the Defendant cites to support its argument are inapposite because they do not involve a case where a borrower is suing only a loan servicer for deceptive business practices, which is the essence of the allegations in this matter. *See Niyaz v. Bank of America*, No. 1:10-CV-796, 2011 WL 63655 (E.D. Va. Jan. 3, 2011); *Johnson v. Countrywide Home Loans*, No. 1:10-CV-1018, 2010 WL 5138392 (E.D. Va. Dec. 10, 2010); *Gerber v. First Horizon Home Loans Corp,* No. C05-1554P, 2006 WL 581082 (W.D. Wash. Mar. 8, 2006). *Gerber* involved a dispute between a borrower and lender, who are expressly bound by the notice provision in the deed of trust. *Johnson* involved a dispute between a borrower and a substitute trustee, not a loan servicer. Although a loan servicer

5

was one of the numerous defendants in *Niyaz*, the plaintiff's case also involved the lender entitled to notice, and the court treated the numerous defendants as a group.

Even if the Plaintiffs were obligated to provide notice to Wells Fargo based on the provision at issue, several courts have acknowledged that identical notice-and-cure provisions do not extend to claims based on deceptive business practices. *See Gerber*, 2006 WL 581082, at *3 (holding that a claim of "deceptive business practices[] clearly exists independent of any contract between the parties"); *also Niyaz*, 2011 WL 63655, at *2; *Johnson*, 2010 WL 5138392, at *2*; *Beyer v. Countrywide Home Loans Servicing LP*, No. C07-1512MJP, 2008 WL 1791506, at *3 (W.D. Wash. 2008); *Abercrombie v. Wells Fargo Bank, N.A.*, 417 F. Supp. 2d 1006, 1007-09 (N.D. Ill. 2006) (holding that "a borrower's noncompliance with a contractual notice and cure provision can[not] excuse a lender's failure to comply with [the Truth in Lending Act's] disclosure requirements").

For these reasons, the Court finds that the notice provision in the deeds of trust does not forestall this litigation.

**B. <u>Virginia Consumer Protection Act</u> (Count I)**

In the first count of their Amended Complaint, the Plaintiffs argue that Wells Fargo violated the Virginia Consumer Protection Act (VCPA) by encouraging the Plaintiffs to pursue loan modifications, denying requested modifications, and pursuing foreclosure. The Court disagrees.

The purpose of the VCPA is to "promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197. To that end, the Act prohibits a long list of "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." *Id.* § 59.1-200. The Act expressly excludes

6

"banks, savings institutions, credit unions, small loan companies, public service corporations, mortgage lenders . . . ," and others. *Id.* § 59.1-199(D). Because Defendant Wells Fargo is a bank, this exclusion is dispositive of the Plaintiffs' VCPA claim.

Accordingly, the Court GRANTS the Defendant's motion to dismiss Count I.

C. **Fair Debt Collections Practice Act** (Count II)

In the second count of their Amended Complaint, the Plaintiffs generally allege that "Wells Fargo's conduct has violated the [Fair Debt Collection Practices Act (FDCPA)]." (Am. Compl. ¶ 52). The FDCPA excludes from its requiremrents "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement." 15 U.S.C. § 1692a(6)(F). Numerous courts have interpreted this exclusion to find that mortgage servicing companies are not debt collectors and are not liable under the FDCPA. *E.g., Scott v. Wells Fargo Home Mortg., Inc.*, 326 F. Supp. 2d 709, 717-18 (E.D. Va. 2003) ("the law is well-settled . . . that creditors, *mortgagors*, and *mortgage servicing companies* are not debt collectors and are statutorily exempt from liability under the FDCPA"); *accord Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 647-48 (E.D. Va. 2010). Given that courts in this district have consistently held, without reversal, that mortgage servicers are not debt collectors under the FDCPA, the Plaintiffs' argument is unpersuasive.

Furthermore, the FDCPA exempts from its requirements debt collection activity that "concerns a debt which was not in default at the time it was obtained by such person.15 U.S.C. § 1692a(6)(F)(iii). Thus, because the Plaintiffs' mortgages were not in default at the time Wells Fargo acquired them, the FDCPA does not apply to their claims.

For these reasons, the Court GRANTS the Defendant's motion to dismiss Count II.

D. **Actual Fraud, Constructive Fraud, Fraudulent Inducement, Fraudulent Misrepresentation, and Negligent Misrepresentation** (Counts III-VII)

In the third through seventh counts of their Amended Complaint, the Plaintiffs allege that Wells Fargo made numerous false representations in writing and via phone from October 2009 through October 2010. The Plaintiffs allege that Wells Fargo's "misrepresentations were made intentionally and knowingly with the intent of either accelerating the foreclosure process or to induce Plaintiffs into making payments that would neither delay nor stop the foreclosure process." (Am. Compl. ¶ 59).

1. **Legal Standards**

Rule 9(b) of the Federal Rules of Civil Procedure requires that complainants plead "the circumstances constituting fraud or mistake . . . with particularity." Under Virginia law, a claim for actual fraud must allege: "(1) a false misrepresentation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Winn v. Aleda Constr. Co.*, 315 S.E.2d 193, 195 (Va. 1984); also *Frank Brunckhorst Co., LLC v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 460 (E.D. Va. 2008). The Fourth Circuit has held that "a complaint which fails to specifically allege the time, place and nature of the fraud is subject to dismissal." *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir. 1990).

In Virginia, "the elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 782 (citing *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). Constructive

fraud also requires a finding that the party making the representation intended the other party to act on it. *Id.*; *Henderson v. Henderson*, 495 S.E.2d 496, 499 (1998). In order to survive a motion to dismiss, the Plaintiffs must plead, "with the requisite degree of particularity, facts which support all the elements of a cause of action for constructive fraud." *Mortarino*, 467 S.E.2d at 782.

2. **Discussion**

The Plaintiffs have not met the pleading standards for any of the various fraud claims they allege because they have not pled that Wells Fargo made a false representation of a material fact or that they were damaged by their reliance on the misrepresentations. At best, the Plaintiffs allege that Wells Fargo's actions were fraudulent because the bank encouraged the Plaintiffs to apply for loan modifications while it pursued foreclosure. The denial of a requested loan modification is not a false representation of material fact.

Even if, as the Plaintiffs claimed for the *first* time at the hearing on this matter, Wells Fargo said or implied that the Plaintiffs would receive modifications if their loans were in default, the Plaintiffs cannot show that they reasonably relied on that representation. In *Foremost Guaranty Corporation v. Meritor Savings Bank*, the Fourth Circuit applied Virginia law and held that "one may not reasonably rely upon an oral statement when he has in his possession a contrary statement in writing." 910 F.2d 118, 126 (4th Cir. 1990). In this matter, the deeds of trust explicitly require the Plaintiffs to make payments and state that the Plaintiffs cannot demand modification of the loan terms. (Mem. Supp., Doc. No. 17, Ex. A., §§ 1, 12; Mem. Supp., Doc. No. 17, Ex. B, §§ 1, 12). Thus, the Plaintiffs cannot show that they reasonably relied on other representations to avoid their responsibilities under the deeds of trust.

The Plaintiffs' various fraud causes of action—to the extent they are actual causes of action that apply to this matter[2]—fail to state claims upon which this Court can grant relief. Accordingly, the Court GRANTS the motion to dismiss the fraud claims.

E. **Estoppel in Pais (Count VIII)**

In the eighth count of the Amended Complaint, the Plaintiffs argue that Wells Fargo should be estopped from offering either of the properties for sale and from allowing any of its employees to purchase the properties.

In Virginia, equitable estoppel requires proof of "a representation, reliance, a change of position, and detriment." *Stewart v. Lady*, 465 S.E.2d 782, 785 (1996). As with actions for fraud, inequitable conduct must be plead with particularity. *Stowe Woodward, LLC v. Sensor Prods., Inc.*, 230 F.R.D. 463, 465 (W.D. Va. Sept. 7, 2005) ("[T]he heightened pleading requirements of Rule 9(b) do apply to claims of inequitable conduct."). Thus, even if estoppel in pais were an independent cause of action,[3] the facts as pled by the Plaintiffs do not state a proper claim because they lack particularity and fail to show detriment.

For these reasons, the Court GRANTS the motion to dismiss Count VIII.

---

[2] The Plaintiffs' "fraudulent inducement," "fraudulent misrepresentation," and "negligent misrepresentation" claims may not be causes of action distinct from the actual and constructive fraud claims alleged. *See Klaiber v. Freemason Assocs., Inc.*, 587 S.E.2d 555, 558 (Va. 2003) (expressing no opinion on whether Virginia recognizes an independent cause of action for fraudulent misrepresentation separate from actual fraud); *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) ("The essence of constructive fraud is negligent misrepresentation."); *id.* at 347-48 (noting that fraud in the inducement exists when "the promisor's intention . . . [w]hen he makes the promise, intending not to perform . . . is a misrepresentation of *present* fact [that] is actionable as an actual fraud" (quoting *Colonial Ford Truck Sales v. Schneider*, 325 S.E.2d 91,94 (1985)) .

[3] The Plaintiffs cite a West Virginia case to support their estoppel in pais, or promissory estoppel claim. While promissory estoppel may be a recognized cause of action in *West* Virginia, it does not appear to be an independent cause of action in Virginia. *W.J. Schafer Assocs. v. Cordant, Inc.*, 493 S.E.2d 512, 516 (Va. 1997) ("Although we have addressed the doctrine of promissory estoppel and even assumed, without deciding, the existence of such a cause of action, we never have held that such a cause of action exists or should be created.").

### F. Truth in Lending Act (Count IX)

The Plaintiffs allege broadly that the Plaintiffs were not provided disclosures required by the Truth in Lending Act (TILA), that they "had been charged excessive and/or unlawful fees," and that there were "defects in their transaction." (Am. Compl. ¶¶ 66-68). They provide no facts to support these allegations.

At the hearing on this motion, the Plaintiffs requested that the Court dismiss this count without prejudice. It is clear, however, that Wells Fargo was not the lender in this matter and cannot be held liable for TILA violations. *See* 15 U.S.C. § 1602(f). Furthermore, it is likely that the statute of limitations has passed for any TILA violations based on the disclosures. For these reasons, the Court dismisses this count with prejudice.

### IV. CONCLUSION

For the reasons above, the Court GRANTS the motion to dismiss. Because no set of facts showing that Wells Fargo refused to grant the Plaintiffs a loan modification would render Wells Fargo liable under the causes of action set forth by the Plaintiffs, the dismissal is WITH PREJUDICE.

Let the Clerk send a copy of this Order to all counsel of record.

It is SO ORDERED.

```
          /s/
James R. Spencer
Chief United States District Judge
```

ENTERED this    26th    day of April 2011.